UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DR. JACQUELINE MIRIAM MOLINE,

                            Plaintiff,

                  -v-

PECOS RIVER TALC LLC,

                            Defendant.

25 Misc. 391 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

      This decision resolves a discovery dispute in a lawsuit pending in the Eastern District of Virginia: *Pecos River Talc LLC v. Emory et al.*, No. 24 Civ. 75 (the "*Emory* action"). Dr. Jacqueline Miriam Moline, a non-party to that action who is the plaintiff here, moves to quash a subpoena from Pecos River Talc LLC ("Pecos River"), the plaintiff in that action. Dkt. 1. The subpoena seeks documents and deposition testimony from Dr. Moline. *Id.* For the following reasons, the Court denies the motion to quash.

**I.    Background**

      Pecos River, an indirect subsidiary of Johnson & Johnson ("J&J"), manufactured products containing talc, including J&J's baby powder. *See LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d 576, 588 (E.D. Va. 2025), *reconsideration denied sub nom.*, *Pecos River Talc LLC v. Emory*, No. 24 Civ. 75, 2025 WL 1249947 (E.D. Va. Apr. 30, 2025). In the *Emory* action, Pecos River sues multiple doctors and plaintiffs'-side expert witnesses—although not Dr. Moline—for trade libel, based on their assertions that cosmetic talc contained asbestos and caused mesothelioma. *See id.* at 587–88. The defendants in that action (the "*Emory* defendants") had published an article (the "*Emory* article") identifying 75 people with malignant mesothelioma.

*Id.* The article stated that these people (1) had not had any known exposure to asbestos except through cosmetic talc, and (2) were separate and apart from 33 subjects of an earlier article to a similar effect by Dr. Moline (the "Moline article"). *Id.* Pecos River alleges that both assertions in the *Emory* article were false. *Id.*

On July 14, 2025, Dr. Moline gave a deposition in a different lawsuit, also involving J&J. Dkt. 5 at 12. She was asked whether she had communicated with the *Emory* defendants as to their article or any potential overlap between their article and hers. *See* Dkt. 6-11 at 5–6. She testified that she had not. *Id.* In fact, as reviewed below, documents produced to Pecos River in discovery in the *Emory* action appear to contradict that claim. *See, e.g.*, Dkt. 11-4 at 2 (October 23, 2019 email among *Emory* defendants, referencing discussion of their article on a call with Dr. Moline); Dkt. 11-2 at 2 (February 13, 2020 emails between Dr. Moline and an *Emory* defendant, reflecting communications as to potential overlap between articles).

On August 8, 2025, in the *Emory* action, Pecos River served a subpoena on Dr. Moline, via her counsel. The subpoena called on her to testify at a deposition in this District on September 15, 2025, and to produce 12 categories of documents. Dkt. 6-1. On August 29, 2025, Dr. Moline served written objections to the subpoena's document requests, but agreed to search for and produce documents relevant to the *Emory* action. Dkt. 6-3. On September 4, 2025, Dr. Moline notified Pecos River that she had not identified any responsive documents. Dkt. 6-4. She also demanded that Pecos River withdraw the notice of her deposition. *Id.* On September 5, 2025, Pecos River stated that it intended to move forward with the deposition. Dkt. 6-5 at 2.

On September 11, 2025, Dr. Moline filed, in this Court, a motion to quash the subpoena, appending a declaration and exhibits. Dkts. 1, 5–6. On September 25, 2025, Pecos River

2

opposed, attaching a declaration and exhibits. Dkts. 10–11. On October 2, 2025, Dr. Moline replied. Dkts. 13–15.

## II.     Applicable Legal Standards

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Federal Rules of Civil Procedure direct courts to quash or modify subpoenas only in limited circumstances, such as where a subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(iii), (iv). To survive a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Alex & Ani, Inc. v. MOA Int'l Corp.*, No. 10 Civ. 4590, 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011) (citation omitted). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)).

Once the issuing party demonstrates relevance, "[t]he movant bears the burden of persuasion in a motion to quash a non-party subpoena." *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citation omitted); *see Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019); *see also Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents [and/or testimony], the breadth of the document, the time period covered by it, the particularity with which the documents [and/or testimony] are described and the burden imposed." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 3 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)

3

(citation omitted); *see Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, No. 13 Civ. 7204 (PAE), 2014 WL 12939056, at *1 (S.D.N.Y. Dec. 1, 2014). Motions to quash subpoenas are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

### III.  Discussion

#### A.  Relevance

Pecos River has carried its burden to show that the subpoena seeks information relevant to its claims. Information is relevant if it encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). All topics in the subpoena are relevant in at least one of two ways.

*First*, the subpoena calls for testimony and documents regarding efforts by the *Emory* defendants to determine the extent to which the mesothelioma patients who were the subjects of the *Emory* article overlapped with the mesothelioma patients who were the subjects of the Moline article. To prevail on its trade libel claim, Pecos River must show that the *Emory* defendants' statements were made with actual malice—that is, knowledge, or a reckless disregard, of falsity. *See LLT Mgmt. LLC*, 766 F. Supp. 3d at 599–600. The *Emory* defendants now admit, contrary to a representation in the *Emory* article, that at least one mesothelioma patient was common to the two articles.[1] Dkt. 11-8 at 6. An attorney for Pecos River represents that, in fact, based on his review, there were eight overlapping patients. *See* Dkt. 11 at 1. Dr. Moline does not dispute that there was some overlap. The *Emory* defendants' knowledge at

---

[1] They now also admit, contrary to another representation in the *Emory* article, that multiple subjects were, in fact, exposed to asbestos from sources other than cosmetic talc. Dkt. 11-7 at 3.

4

relevant times as to the existence and extent of this overlap—as well as whether any covered patient had had any known exposure to asbestos apart from cosmetic talc—is thus central to the *Emory* action.

Pecos River has adduced evidence strongly indicating that Dr. Moline communicated with the *Emory* defendants about the extent of overlap among their respective subjects. On February 11, 2020, Dr. Theresa Emory emailed another *Emory* defendant, Dr. John Maddox: "I have SGP [Simon Greenstone Panatier, PC, a plaintiffs'-side law firm] trying to help ensure that the Moline cases are not overlapping ours." Dkt. 11-22 at 2. On February 12, 2020, Dr. Emory emailed an SGP representative about arranging a call with Dr. Moline. Dkt. 11-26 at 2. In this email, Dr. Emory wrote: "I am also attempting to make sure we are not duplicating patients from my end. Any help you can provide would be greatly appreciated. I am sure Dr. Moline does not want us to duplicate her cases either." *Id.* The next day, Dr. Emory emailed Dr. Moline directly: "I am working with [the other *Emory* defendants] on a study. Before we submit for publication, I want to make sure that a few of the cases have not already been published by you. If possible, I would appreciate the opportunity to discuss with you." Dkt. 11-2 at 2. The same day, Dr. Moline replied, "[P]lease give me a ring tomorrow," specifying that she would be more available "in the morning." *Id.* At 11:03 a.m. the next day, February 14, 2020, Dr. Emory emailed another *Emory* defendant, Dr. Richard Kradin: "I am removing 4 cases from the study because they have already been reported. The final number will be 75 cases." Dkt. 11-3 at 1.

Dr. Moline argues here that she does not have any relevant information because, in discovery taken in the separate J&J lawsuit, she "already testified under oath that she did not have any discussion with the *Emory* defendants about their article or the Moline Article." Dkt. 5 at 13. She cites her following testimony in a July 14, 2025 deposition:

> Q. Did you have any communications with Dr. Emory, Dr. Maddox or Dr. Kradin regarding either of your two articles?
>
> A. No.
>
> Q. Did any of them ask you to identify the individuals in your 2020 article to ensure that there wasn't an overlap between the two articles?
>
> A. No, we didn't have communications. . . .
>
> Q. Did you have any communications with either Dr. Maddox, Dr. Emory or Dr. Kradin regarding their article regarding the 75 individuals?
>
> A. I did not.

Dkt. 6-11 at 5–6. However, in light of the emails reviewed above—which themselves appear on their face to be communications between Dr. Moline and the *Emory* defendants about the articles, and suggest that Dr. Moline discussed the subject of overlapping mesothelioma patients with them on a call—there is sound reason to question whether her deposition answers were false or misleading, and to allow Pecos River to explore the point in a deposition of her in the *Emory* action.

Dr. Moline's arguments to the contrary are not convincing. She now appears to hedge her statements in the deposition, stating that "no *email* contains any *substantive* discussion about the two articles." Dkt. 13 at 4 (emphases added). Her deposition testimony, however, did not contain any of these qualifiers: she appears to have squarely testified that she had not had "any communications" with the *Emory* defendants about either article. Dkt. 6-11 at 5–6. Dr. Moline also states that, on a call with Dr. Emory, she had told Dr. Emory that "it was inappropriate to discuss patients' names" and therefore "declined to discuss the overlap in research subjects." Dkt. 13 at 7–8. That assertion implicitly *admits* that the information sought by the subpoena is relevant, insofar as it appears tacitly to concede that the topic was broached on a call between Dr. Moline and Dr. Emory. And that representation by Dr. Moline appears to contradict her July 14

6

testimony. There, asked whether "any" *Emory* defendants asked her to identify the subjects in her article "to ensure that there wasn't an overlap between the two articles," she answered: "No, we didn't have communications." Dkt. 6-11 at 5–6. Her statement now that, on a call, she purportedly declined to discuss that topic suggests that at least some such communications—even if promptly deflected—occurred.

*Second*, the subpoena seeks testimony and documents regarding potential coordination among Dr. Moline, the *Emory* defendants, and SGP with respect to the articles by Dr. Moline, the *Emory* defendants, and a third group of authors (the "Steffen authors"). The court presiding over the *Emory* action, in granting in part and denying in part a motion to dismiss, held that Pecos River had plausibly alleged that those defendants "intended to contribute to a body of literature manufactured to be presented in court," with their intended audience being "the plaintiffs' bar, rather than the scientific community." *LLT Mgmt. LLC*, 766 F. Supp. at 588, 595. That inference is disputed: the *Emory* defendants represent that the article was unrelated to their service as paid experts in cosmetic talc litigation. Dkt. 11-6 at 9; *see also* Dkt. 11-8 at 5. The extent to which the *Emory* defendants undertook their research in coordination with SGP for the purpose of bolstering litigation efforts is relevant to this dispute. It has potential to influence a factfinder in assessing whether, as Pecos River claims, the defendant authors were motivated to reach certain conclusions, and did so in reckless disregard for the truth.

On this point, Pecos River has adduced evidence that SGP, which was involved in de-duplicating the subjects of the *Emory* and Moline articles, had multiple communications with the *Emory* defendants about the risks of overlap with as-yet unpublished articles by Moline and others. From April 10 to June 11, 2019, Dr. Maddox (an *Emory* defendant) exchanged emails with an SGP shareholder regarding cases to include in the *Emory* article. Dkt. 11-33 at 2–5; *see*

7

*also* Dkt. 11-5 at 6–7 (Dr. Maddox testifying that SGP sent him cases that he later included as subjects in the *Emory* article). On August 10, 2019—two months before Dr. Moline published her article, *see* Dkt. 11-16 at 5 n.3—Dr. Maddox emailed Dr. Kradin (another *Emory* defendant) that he had "heard from [named SGP shareholder] Chris Panatier that Longo [a Steffen author], Gordon [a Moline article co-author] and Moline have just submitted their paper regarding asbestos in ta[l]c," Dkt. 11-15 at 1. The article by the Steffen authors—which also addressed asbestos exposure from cosmetic talc—was published alongside Moline's, in the same volume and journal. *See* Dkt. 11-29 at 1. And on February 11, 2020, as noted, Dr. Emory emailed Dr. Maddox: "I have SGP trying to help ensure that the Moline cases are not overlapping ours." Dkt. 11-22 at 2.

Dr. Moline responds that the claims that these articles were written for litigation purposes; were coordinated, including by a plaintiffs'-side law firm; and took liberties with the facts, are baseless "conspiracy theor[ies]." Dkt. 13 at 9. That may or may not prove so. On the record before the Court, however, Pecos River has adduced evidence indicating that Dr. Moline likely possesses information bearing on communications among SGP and the *Emory* defendants regarding overlap between the Moline and/or Steffen articles. Such evidence has clear potential to bear on Pecos River's claims of actual malice.

Pecos River has shown that the subpoena seeks relevant information from Dr. Moline. *See, e.g.*, *Oppenheimer Fund*, 437 U.S. at 351; *Ohio Dep't of Ins.*, 2020 WL 8513150, at *2; *Arch Assocs., Inc. v. HuAmerica Int'l, Inc.*, No. 93 Civ. 2168, 1994 WL 30487, at *2 (S.D.N.Y. Jan. 28, 1994).

### B. No Undue Burden or Harassment

The burden thus shifts to Dr. Moline to show undue burden or harassment that warrants quashing the subpoena, notwithstanding the relevant evidence it seeks. *See Hughes*, 327 F.R.D. at 57. Her arguments to this end, however, presuppose the irrelevance of her testimony and the absence of responsive documents. *See* Dkt. 5 at 19–20 (citing cases finding an undue burden "where any information to be gained would be 'minimally relevant,'" and where subpoena recipient had "no documents" and "'no current recollection' of any relevant events"); *id.* at 20 (arguing that Pecos River's refusal to withdraw the subpoena when Dr. Moline "has repeatedly affirmed she has no relevant knowledge regarding the Emory article can only be explained as an attempt to harass her").

These arguments lack merit. For the reasons above, Pecos River has adduced a sound documentary basis to challenge Dr. Moline's claim not to have had relevant communications with the *Emory* defendants. It follows that her assertion, based on that claim, of an undue burden and harassment is likewise conclusory and disputable.[2] In any event, Dr. Moline has testified as a paid plaintiffs' expert in asbestos litigation for more than 25 years, *see* Dkt. 11-24 at 4, and does so approximately once a month, Dkt. 11-34 at 6. Sitting for an additional deposition, and searching for and producing responsive records, will not materially burden her.

---

[2] The subpoena properly excluded from its requests for documents any communications between Dr. Moline and her own retained attorneys in this litigation. Dkt. 6-1 at 8–9. Dr. Moline nonetheless asserts that questions put by Pecos River could implicate "privileged communications with attorneys in cases in which she served as a plaintiff-side expert." Dkt. 5 at 7. That concern is hypothetical. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) ("[A] person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof.") And, to the extent that she invokes the work-product doctrine in objecting to the subpoena, *see* Dkt. 6-3 at 6–7, any evaluation of that claim is premature. Such a claim is document-specific and would require production first of a privilege log. *Cf. id.*

Dr. Moline has not shown that enforcement of the subpoena would cause an undue burden or allow harassment. *See, e.g., Ohio Dep't of Ins.*, 2020 WL 8513150, at *3 (rejecting conclusory arguments as to undue burden); *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016) (same); *Taylor Precision Prods., Inc. v. Larimer Grp. Inc.*, 15 Civ. 4428, 2017 WL 10221320, at *5 (S.D.N.Y. Feb. 27, 2017) (same).

## CONCLUSION

For the reasons above, the Court denies Dr. Moline's motion to quash the subpoena, and orders her to comply with it forthwith, such that Pecos River has sufficient time to incorporate her testimony and any produced documents into the summary judgment briefing due October 17, 2025. The Court denies Dr. Moline's request for oral argument on her motion.

The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: October 10, 2025
       New York, New York